Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6739 | **DATE** | 6/6/2002 |
| **CASE TITLE** | JEFFERY J. VLADIC vs. JAMES HAMANN | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendants' motions for summary judgment are denied. Status hearing held.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 0 7 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEFFERY J. VLADIC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 00 C 6739 |
| v. ) | |
| ) | |
| JAMES HAMANN and KATHY BREEN, ) | Judge John W. Darrah |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jeffery J. Vladic ("Vladic"), filed a two-count complaint against two Glen Ellyn, Illinois police officers, James Hamann ("Hamann") and Kathy Breen ("Breen"). Vladic's Second Amended Complaint alleges that the Defendants violated 42 U.S.C. § 1983 and the United States Constitution when they falsely arrested him following an unlawful search. Presently pending before this Court are Defendants' Motions for Summary Judgment.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Hamann and Breen are/were police officers with the Village of Glen Ellyn. (Def. Hamann's

56.1(a)(3) Statement ¶¶ 1-2). Sometime in October 1998, and prior to October 29, 1998, Agent Negro ("Negro"), from the Indiana Drug Enforcement Agency, visited Hamann. (Id., at ¶ 3). Negro informed Hamann that a confidential informant had revealed information regarding illicit drug production at 505 Taylor Street, Apartment 6, in Glenn Ellyn, Illinois. (Id., at ¶ 4). Negro informed Hamann that Stuart Rose ("Rose") may be engaged in narcotics manufacturing at that location. (Plaint.'s 56.1(a)(3) Statement ¶ 2). Negro asked Hamann if there were any complaints regarding conduct on the premises at 505 Taylor Street. Hamann performed a computer search, which revealed that the Glen Ellyn Police Department had not received any complaints regarding either 505 Taylor Street or Rose. (Id., at ¶ 3).

On or about October 27, 1998, Hamann received a complaint from John Briggs ("Briggs"), the prior owner of the 505 Taylor Street apartment complex, that large amounts of copper wire were within Rose's apartment. (Def. Hamann's 56.1(a)(3) Statement ¶¶ 5-6).

On October 29, 1998, Hamann received a telephone call from Steve King ("King"), the owner of the 505 Taylor Street apartment complex. During the conversation, King mentioned large amounts of stripped copper wire in the dumpster from Apartment 6. (Def.'s Hamann's 56.1(a)(3) Statement ¶ 7). Later that same day, Hamann again spoke with Negro. Negro informed Hamann that copper wire did not have anything to do with Negro's previous inquiries regarding Rose's apartment. Negro also identified Vladic as his informant. (Plaint.'s 56.1(a)(3) Statement ¶ 5).

Hamann and Breen then traveled to 505 Taylor Street. (Def. Hamann's 56.1(a)(3) Statement ¶ 8). While driving the three blocks to 505 Taylor Street, Hamann informed Breen of the information he had pertaining to Rose's apartment. Prior to this time, Breen had not been privy to this information. (Def. Breen's 56.1(a)(3) Statement ¶¶ 18-20; Plaint.'s Response to ¶¶ 18-19).

Upon arrival at 505 Taylor Street, Hamann and Breen observed a dumpster containing black cable, which appeared to be stripped insulation from wire. (Def.'s Breen's 56.1(a)(3) Statement ¶ 21). After verifying the existence of the stripped wire insulation, Hamann decided to knock on Rose's door to "see where all this [wire insulation] was coming from". (Id., at ¶ 22). Both officers approached the door to Apartment 6, and Hamann knocked on the door. The officers were in plain clothes, were armed and had badges identifying them as police officers. When Hamann knocked on the door, Breen was standing behind Hamann and to his right. (Id., at ¶ 23). When the door was opened, Breen observed a male individual who later came to be known as Rose. Hamann identified himself and Breen as police officers, showed Rose some wire insulation from the dumpster, and told Rose that, "We need to talk about this". (Id., at ¶ 24).

The actions of Hamann, Breen, and Rose following the above conversation are in dispute. Hamann and Breen contend that Rose did not make any further verbal statements and "backed up". (Def. Breen's 56.1(a)(3) Statement ¶ 25). Hamann and Breen entered the apartment where Breen was instructed by Hamann to "watch the person on the couch". Vladic was on the couch and appeared to be sleeping. (Id., at ¶ 29). After Hamann and Rose had a brief conversation, they went from the living room into the kitchen and then the bedroom. (Id., at ¶ 31). While in the bedroom, Hamann observed a pyrex dish. When he asked Rose about its contents, Rose admitted that the contents of the dish was "speed". (Id., at 32). Shortly thereafter, a pipe and plastic baggie containing a white crystal substance were discovered in the living room. (Id., at ¶ 35). After the drugs were recovered, Hamann asked Rose if he would sign a consent to search the apartment; Rose refused. (Id., at ¶ 36).

Vladic contends that when the officers arrived at the apartment, Rose stood in the doorway,

3

blocking the officers' view into the apartment. (Plaint.'s 56.1(a)(3) Statement ¶ 13). Before, the officers entered the apartment, Rose informed the officers that he was a law school graduate and former attorney and told the officers that he did not want them to enter the apartment and that they could talk outside. (Id., at ¶ 16). The officers ignored Rose and entered the apartment. (Id., at ¶ 17). Vladic was lying on the couch in Rose's apartment when the officers entered. While he appeared to be asleep, he was awake and able to hear and see the interaction. Vladic was an overnight guest at Rose's apartment and had stayed at the apartment for approximately three days. (Id., at ¶ 19).

Vladic further contends that Hamann had a brief conversation with Rose in the living room. During the conversation, Rose reiterated that he did not want the officers in his home. (Plaint.'s 56.1(a)(3) Statement ¶ 20). Hamann left the living room to search more of the apartment, and Breen stayed in the living room to watch Vladic. (Id., at ¶ 21). The officers did find drug paraphernalia in Rose's apartment; however, none was found on Vladic's person. (Id., at ¶ 23).

After finding the white crystal substance and drug paraphernalia within the apartment, Rose and Vladic were arrested and taken to the Glen Ellyn Police Station. (Plaint.'s 56.1(a)(3) Statement ¶ 24). At the police station, Breen and an assistant state's attorney, Isuf Kola ("Kola"), drafted a Complaint for Search Warrant ("Warrant"). (Id., at ¶ 26). Breen signed the Warrant. (Id., at ¶ 27). According to Vladic, the Warrant incorrectly stated that Breen had knocked on Rose's door, when Hamann had actually been the officer that knocked on the door. The Warrant also stated that Breen asked for permission to enter the apartment and that Rose agreed to allow the officers into the apartment. (Id., at ¶ 29). As noted above, Vladic also disputed this statement.

On October 30, 1998, Vladic was charged with Unlawful Manufacturing of Controlled

4

Substances. Subsequently, the charge against Vladic was dismissed *nolle prosequi*, and he was released. Vladic was incarcerated for more than seven months prior to his release.

1. Unlawful Search Claim

Defendants first argue that summary judgment on Vladic's unlawful search claim is proper because Vladic does not have standing to challenge the search of Rose's Apartment.

A person must demonstrate that he enjoyed a legitimate expectation of privacy in the invaded place to have standing to claim the protection of the Fourth Amendment's protection from unreasonable searches. *See Rakas v. Illinois*, 439 U.S. 128, 143 (1978). An overnight guest has a legitimate expectation of privacy in his host's home to establish standing to bring a Fourth Amendment challenge. *See Minnesota v. Olsen*, 495 U.S. 91, 96-97 (1990) (*Olsen*).

In the instant case, Vladic avers that he was an overnight guest at Rose's apartment for approximately three days before the search. This argument is supported by the officer's admission that, when they entered the apartment, Vladic was lying on the couch in the living room and that the officers thought that Vladic was asleep. At a minimum, these undisputed facts establish the existence of a genuine issue of material fact whether Vladic has standing to bring his unlawful search claim.

Defendants also argue that they are protected from liability under the doctrine of qualified immunity.

If a public official raises the defense of qualified immunity, the plaintiff bears the burden of showing: (1) whether he has asserted a violation of a constitutional right and (2) whether the applicable constitutional standards were clearly established at the time the alleged violation occurred. *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000). A clearly established right is

5

established if the plaintiff can demonstrate that "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (*Anderson*). Under the qualified immunity doctrine, a "law enforcement officer who participates in a search that violates the Fourth Amendment may [not] be personally liable ... if a reasonable officer could have believed that the search comported with the Fourth Amendment." *Anderson*, 483 U.S. at 636-37.

In the instant case, the parties do not dispute that Vladic has asserted a violation of a constitutional right - a search violative of Vladic's Fourth Amendment rights. Police officers may not constitutionally enter a home without a warrant to conduct a search or make an arrest, absent consent or exigent circumstances, even if the officers have probable cause. *Payton v. New York*, 445 U.S. 573, 585-90 (1980); *Johnson v. United States*, 333 U.S. 10, 13-15 (1948).

The Defendants argue that a reasonable police officer would believe that they had received a valid consent to search Rose's apartment based on the facts as presented by the Defendants; therefore, they are protected by qualified immunity. The flaw in Defendants' argument is that the facts that lead up to the officers entering Rose's apartment, at least as to whether consent was expressly given or given by implication, are in dispute. The different accounts of the conduct of the officers and Rose, including whether Rose expressly denied consent to enter the apartment, establish genuine issues of material fact whether a reasonable officer would believe that Rose consented to a search of the apartment.

Defendant Breen also contends that summary judgment for Vladic's illegal search claim is proper for her because she entered the apartment to serve as back-up to her superior police officer. Breen's argument lacks merit because, as discussed above, questions of material fact exist whether

consent was given to enter the apartment and whether consent was expressly denied. If consent was expressly denied, a jury could find that Breen's entry into the apartment was not reasonable, irregardless of the presence and actions of her superior officer. Accordingly, summary judgment on Vladic's unlawful search claims is denied.

2. Illegal Arrest Claim

Defendants argue that summary judgment should be granted on Vladic's illegal arrest claim because the officers had probable cause to arrest Vladic.

"The existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest...." *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989). Probable cause exists if the officer believes that the suspect has committed or was committing an offense based on the facts and circumstances known to the officer at the time the arrest is made. *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) (*Woods*); *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999) (*Spiegel*). "Probable cause 'demands even less than probability,' it 'requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false.'" *Woods*, 234 F.3d at 996 (citations omitted). Probable cause can be established by an identification or a report from a single, credible victim or eyewitness. *Woods*, 234 F.3d at 996; *Spiegel*, 196 F.3d at 723. The correct question to be answered is whether the officer 'acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be construed ... after the fact.' *Spiegel*, 196 F.3d at 723 (citation omitted). Furthermore, once probable cause is established, an officer does not have a constitutional duty to conduct further investigation in the hope of finding potentially exculpatory evidence. *Woods*, 234 F.3d at 997; *Spiegel*, 196 F.3d at 723.

7

Here, at the time of Vladic's arrest, the Defendants had knowledge that it was believed that illicit drugs were being manufactured at 505 Taylor Street through discussions with Negro and when Hamann observed the pyrex dish in Rose's bedroom, which Rose admitted contained speed. However, this knowledge was based on allegations that Rose was manufacturing drugs at the apartment. The officers did not have any knowledge of possible illegal activity by Vladic. The officers also knew that there were two reports of "suspicious" behavior at the apartment because of large amounts of copper wire being disposed of by the occupant of the apartment and that Rose alleged that Vladic brought the copper wire into the apartment. Neither Vladic, nor Rose, was arrested for the presence of the copper wire, and the officers do not allege that the copper wire was part of any illegal activity. The officers also knew that Negro had stated that the copper wire did not have any connection to his questions concerning Rose's apartment.

Hamann observed the "speed" and pyrex dish in an adjoining room to the living room, where Vladic was lying on a couch. The white crystal substance in a baggie and the pipe were found in the room that Vladic occupied. However, no drugs or drug paraphernalia were found on Vladic, and the parties do not indicate the proximity of the drugs and drug paraphernalia to Vladic or how they were discovered. It is also unknown whether the officers believed that Vladic was even aware that the baggie with the white crystal and the pipe were in the same room where he slept. Based on these undisputed facts, it cannot be concluded that no reasonable jury could find that the officers did not have probable cause to arrest Vladic.

Defendants also argue that irregardless of a finding of probable cause, summary judgment would still be appropriate because the Defendants' decision to arrest Vladic was protected by qualified immunity.

8

"Because qualified immunity protects all 'but the plainly incompetent or those who knowingly violate the law,' a law enforcement officer will be immune to claims based on an arrest without probable cause unless 'it is obvious that no reasonably competent officer' would have believed that there was probable cause to arrest." *Spiegel*, 196 F.3d at 723 (citation omitted).

Based on the facts set forth above concerning the probable cause to arrest Vladic and the disputed facts as to the truth of the affidavit used to obtain the Warrant, which brings into question the officers' knowledge that their conduct may have been unlawful, issues of material fact exist whether no reasonably competent officer would have believed that there was probable cause to arrest Vladic.

For the reasons stated above, Defendants' Motions for Summary Judgment are denied.

Dated: June 6, 2002

JOHN W. DARRAH
United States District Judge